[Civ. No. 13256. Second Dist., Div. One. Mar. 23, 1942.]

M. O. JOHNSTON, Appellant, v. HAROLD C. YARBROUGH et al., Respondents.

644

Hill, Morgan & Bledsoe, A. J. Hill, Vincent Morgan, Stanley S. Burrill and Kenneth K. Wright for Appellant.

Raphael Dechter, B. L. Hoyt and Michael G. Luddy for Respondents.

YORK, P. J.—Appellant brought the instant action against two distinct sets of defendants, to wit: (1) H. C. Yarbrough, Oil Tools, Inc., Yarbrough Guns Co., and (2) Technicraft Engineering Corporation, Lane-Wells Co., Walter Wells and Wilfred G. Lane, and prosecutes this appeal from judgments in favor of said defendants, contending that the evidence is insufficient to sustain certain of the findings of fact, and that the court erred in its rulings excluding evidence sought to be introduced by appellant.

The record herein reveals that in December of 1932, appellant, claiming to be the inventor of a "gun perforator involving the fire retarding means and sequential firing," filed an application for letters patent in the United States Patent Office. A gun perforator is used in the oil well industry for perforating oil well casing after it has entered the well, in order to permit the oil to filter through such perforations from oil bearing strata. Previous to filing his application, appellant had been working with respondents Wells and Lane in an endeavor to perfect the device under an agreement whereby he, as inventor, was to have a 50 per cent interest in the same. Unknown to appellant, and while they were carrying on their experiments with the gun, respondent Lane made application for letters patent therefor, whereupon appellant withdrew from his association with these two men, and filed his application, as hereinbefore mentioned. Appellant's applica-

tion, after some preliminary proceedings in the patent office, came into interference with the application of respondent Lane which application later became the property of respondent Technicraft. On June 29, 1935, the patent office declared interference between the two applications and the matter was then ready for determination of the question as to who was the inventor of the device and to whom said patent should be issued.

It also appears that at the time appellant filed his application for letters patent there had been issued by the patent office patents to various other persons covering various types and kinds of "gun perforators," including a patent on a gun perforator known as the "Mims" patent which was "analogous to what is known as a basic patent in the patent office," and which was also controlled by Technicraft.

On April 18, 1934, the appellant and the respondent Yarbrough entered into a written contract by the terms of which appellant agreed to convey to respondent Oil Tools, Inc. (which corporation had been organized on March 17, 1934, by respondent Yarbrough) his application for letters patent, together with a license agreement which he owned under another patent known as the Ridley & Sutliff patent, in exchange for which appellant was to receive one-half of the stock of Oil Tools, Inc., the other half to be issued to and owned by said Yarbrough, each party contributing to the corporation the sum of $1,500 in cash.

Pursuant to said contract, appellant conveyed his application and license agreement to the corporation and received one-half of the stock issued, the other half being issued to Yarbrough. The corporation then commenced operations with Yarbrough as its general manager, and subsequently became the owner by assignment of an application for letters patent filed by Yarbrough embracing a gun perforator. Up to this time the gun had not been used commercially.

The subsequent operations of Oil Tools, Inc., were mainly experimental, and during the course of such experiments both appellant and Yarbrough advanced and loaned to the corporation considerable sums of money which were used to carry out the experimental work. Much difficulty was experienced by the corporation in its endeavor to make a gun into a workable product, it being unable to acquire certain types and kinds of equipment necessary for this purpose, such as cable, measuring devices and other patented appliances, patents

for which were controlled by other organizations, including Technicraft.

During this period of development by Oil Tools, Inc., respondent Yarbrough devoted his entire time and attention, together with his money, in an endeavor to make the corporation a success; appellant was engaged in other phases of the oil business, but insofar as Oil Tools, Inc., was concerned, he was acting in an advisory capacity. Meanwhile respondent Technicraft which controlled the Mims, as well as other patents embracing several phases of the art of gun perforating, built up a large and lucrative business and was entirely successful in the field.

About December 15, 1935, it became necessary for Oil Tools to obtain more money to carry on its work, whereupon Yarbrough called upon appellant to put up an additional $1,500, which appellant refused to do unless Yarbrough would do likewise. Yarbrough was short of funds and advised appellant he could advance no more money. Discussion between the parties ensued which culminated in a "buy or sell" proposition, appellant agreeing to sell his interest in Oil Tools. Appellant gave Yarbrough a ten-day option to purchase said interest, the substance of which was that appellant's stock was to be purchased for $5,000—$1,500 cash and $3,500 to reduce Oil Tools' indebtedness to appellant—and a further 8 per cent of the gross proceeds received from the rental or sale of gun perforators to be applied on the balance of the indebtedness due appellant from Oil Tools, which balance was therein fixed at the sum of $6,642.30, payable two years after date. Said option also provided for payment to appellant over a period of seventeen years thereafter of 2 per cent of the gross receipts, or at least $1,200 per year. This option was given with the understanding and for the purpose of enabling Yarbrough to raise money to exercise the same. However, he was unsuccessful in his effort, and appellant gave him a verbal extension thereof, and on January 31, 1936, Yarbrough and appellant executed an agreement pursuant to the terms of the option.

While the option was pending, Yarbrough continued his efforts to raise the money and on January 15, 1936, contacted and had his first meeting with respondent Wells, an officer of respondent Technicraft Engineering Corporation. At this meeting they discussed the various aspects of the situation,

to wit: the respective patent applications; the interference proceedings between appellant's application and the Lane application (the latter then being owned by Technicraft) and the possibility of a compromise of the same for the mutual benefit of the contending parties, as well as the expense involved in a determination thereof; also the fact that Technicraft had theretofore threatened Oil Tools, Inc., with infringement of the Mims patent.

Negotiations continued intermittently between respondent Yarbrough and respondent Wells, the latter definitely stating to Yarbrough that he would make no deals with Oil Tools, Inc., so long as appellant was interested in any manner with said corporation. As a result of such negotiations, a meeting was held on January 28, 1936, in the office of Mr. Brown, the patent attorney for Technicraft, at which time discussion took place between the interested parties, and Brown prepared a memorandum addressed to Yarbrough's attorney outlining the basis upon which Technicraft would deal with Oil Tools, Inc. Another meeting was held on January 31, 1936, at which time respondent Wells was apparently satisfied that Yarbrough either had purchased or was in a position to purchase appellant's interest in Oil Tools, Inc.

On February 2, 1936, Oil Tools, Inc., consented to and joined in the execution of the agreement of January 31, 1936, between Yarbrough and appellant, whereupon Yarbrough completed his contract with appellant for the purchase of the latter's interest in Oil Tools, paying him the sum of $5,000 cash from the $7,000 which Yarbrough had previously received from Wells as a loan. Yarbrough personally guaranteed the performance of the contract of January 31, 1936, but there is a dispute in the evidence as to whether Yarbrough told Wells that he intended to use part of the $7,000 loan to purchase appellant's interest. Appellant made no inquiry and Yarbrough made no disclosure as to where the latter was to get the money to exercise the option and they had no discussion relative to Technicraft. Final agreement between Oil Tools, Inc., and Technicraft was not reached until February 14, 1936; appellant had no knowledge of the negotiations being conducted between Yarbrough and Technicraft, but in all of these negotiations leading up to the contract of February 14, 1936, Technicraft was represented by its attorney, J. Calvin Brown, and Oil Tools, Inc., by its attorney, Frank

L. A. Graham. The court found that the terms of said agreement were unknown to appellant until January 31, 1937.

Oil Tools, Inc., subsequently received from Technicraft the sum of $15,000 cash, including the $7,000 above referred to, all of which was used in Oil Tools' business except the $5,000 paid to appellant. By the terms of the contract of February 14, 1936, between Technicraft and Oil Tools, Inc., the latter transferred to the former appellant's application for letters patent, the Yarbrough application and the license agreement under the Ridley and Sutliff patents, in return for which Technicraft granted to Oil Tools a nonexclusive license to make and use, but not to sell, the devices, including gun perforators, covered by the generic Mims patent controlled by Technicraft; the Lane application; the appellant's application, and a sub-license under the Ridley application. Likewise, Technicraft agreed to sell to Oil Tools specially constructed cables, weight indicators and measuring devices, power take-offs and other patented devices made under its patents at the regular selling price. The lack of these devices had been one of the reasons why Oil Tools had been unable to operate commercially the gun perforator which it had been attempting to perfect.

It should be noted that by the above agreement of February 14, 1936, the threatened suit by Technicraft against Oil Tools on the Mims patent and the pending interference proceeding between the appellant's and the Lane applications with its probable cost, were eliminated. Said interference proceeding was dissolved by reason of common ownership of such applications and a patent was issued on appellant's application under date of July 21, 1936, being serial number 2,048,451.

Subsequent to the agreement of February 14, 1936, Technicraft extended a line of credit to Oil Tools, Inc., advanced money to it to keep it going and also furnished information and facilities to Oil Tools for its use in the gun perforating business.

Prior to the execution of the option agreement of December 15, 1935, and the agreement of January 31, 1936, between Yarbrough and appellant, the latter requested that Oil Tools assign the application for letters patent to him as security for the indebtedness owing by Oil Tools to him. This Yarbrough was unable to do, and offered appellant a mortgage on

his home. Appellant refused such offer but demanded and received a block of Yarbrough's stock in Oil Tools as security for such indebtedness.

On August 31, 1936, and without the knowledge of Technicraft, Oil Tools executed a chattel mortgage to Yarbrough on its assets for moneys which Yarbrough had advanced to it. Yarbrough assigned this mortgage to Oilfields National Bank at Brea to obtain credit and the bank later foreclosed said mortgage and bid in the property. Appellant knew of the proposed execution of said mortgage and attempted to prevent it by making demand on Oil Tools under date of August 29, 1936, of "immediate payment of ten per cent (10%) of the gross receipts from the rental, use, and/or sale of gun perforators received by you, your licensees and agents during the months of March, April, May, June and July, 1936 . . . the immediate payment to me of damages in the sum of Five Thousand Dollars ($5,000.00) sustained by me during the aforesaid months by reason of the breach by you of the aforesaid agreement (of January 31, 1936) and in particular the following covenants thereof, which you have breached and which read in part as follows:

" 'It is further understood and agreed that said corporation will at all times assert reasonable effort to create a demand for the general use of its perforating gun and will satisfy said demand; . . .

" 'It is further covenanted, understood and agreed that said corporation will within sixty (60) days from the date hereof have one complete casing perforating gun outfit operating and shooting reasonably continuously, and that the said corporation will within six (6) months from the date hereof have an additional complete casing perforating gun outfit operating and shooting reasonably continuously . . .' "

Appellant served notice of such demand upon the Oilfields National Bank of Brea.

After the foreclosure of the mortgage, Yarbrough succeeded in interesting outside capital, as a result of which respondent Yarbrough Guns Company was organized. The former assets of Oil Tools which had been acquired by the bank were transferred to Yarbrough and by him to the new guns company in exchange for stock in that company. Approximately $100,000 was raised from these outside sources which went into Yarbrough Guns Company. Before the or-

ganization of the Yarbrough Guns Company around March 1, 1937, Yarbrough contacted appellant and advised him of the condition of Oil Tools and the proposed refinancing thereof, and offered appellant stock in the new company on the same basis that he, Yarbrough, would receive stock therein, to wit: on a dollar for dollar basis for the moneys due appellant and Yarbrough which they had theretofore contributed to Oil Tools. This appellant refused to do and demanded that Yarbrough and Oil Tools perform the terms of the original contract of January 31, 1936. Appellant at this time knew of the terms of the Oil Tools-Technicraft contract of February 14, 1936. Yarbrough on behalf of Yarbrough Guns Company then attempted to obtain a new license agreement from Technicraft embracing the matters set forth in the original agreement of February 14, 1936, and was informed that such license would not be given unless the moneys which were due Technicraft were paid, which at this time amounted to approximately $18,000.

Upon the payment of this sum by Yarbrough Guns Company on March 15, 1937, Technicraft gave said guns company a new license agreement covering the letters patent and applications for letters patent which were embraced in the original contract of February 14, 1936, and upon substantially the same terms. None of the persons connected with Yarbrough Guns Company was in any wise connected with Technicraft, nor did Technicraft have knowledge of the organization of the guns company until Yarbrough sought the new license agreement from it.

While it is admitted that appellant first became aware in the month of July, 1936, of the transfer of his patent application to Technicraft, it is urged that "he did not know of the facts which gave him the right to rescind, nor did he even know that Oil Tools, Inc., had made the transfer under circumstances which showed that Technicraft had knowledge of his rights at the time of the assignment."

It is alleged in the second amended complaint that appellant on September 24, 1937, "caused to be served upon all of the defendants herein, with the exception of H. C. Yarbrough and defendant Yarbrough Guns Company, his notice of rescission, and then and there offered to return everything of value received by him in said transaction, and to place all

parties in the same position they were in before the execution of said contract dated January 31, 1936."

After setting out in *haec verba* the agreement of January 31, 1936, the consent and joint execution of Oil Tools, Inc., dated February 2, 1936, and the guaranty of Yarbrough, the court found: "that in the negotiations leading up to the execution of said contracts and agreements hereinabove set forth and referred to, that there was no plan or scheme on the part of defendants or any of them to defraud Plaintiff, nor was the execution of any of said agreements by the Plaintiff herein induced by or caused by a plan or scheme of any nature whatsoever to defraud or otherwise illegally deprive Plaintiff of any rights or properties which might have been owned or which were conveyed away or disposed of under the terms of said agreements hereinabove set forth; the court further finds that the Plaintiff at all times during the negotiations leading up to the execution of the agreement of January 31, 1936, was represented and advised by independent counsel; that no representations of any kind were made by the Defendant Yarbrough to induce the Plaintiff to execute such agreement of January 31, 1936; that said agreement of January 31, 1936 was entered into by the Plaintiff voluntarily and free of any fraud, coercion or undue influence on the part of anyone; that said agreement of January 31, 1936, was the result of Plaintiff's own offer to the Defendant Yarbrough that he would either buy or sell the stock of Oil Tools, Inc., from or to the Defendant Yarbrough, on the terms set forth in the agreement of January 31, 1936. That prior to the execution of the agreement of January 31, 1936, Plaintiff had given the Defendant Yarbrough an option to purchase his stock interest in Oil Tools, Inc., substantially on the terms and conditions set forth in the agreement of January 31, 1936, being Exhibit 'B' of the Second Amended Complaint; that no representations of any kind had been made by the Defendant Yarbrough to the Plaintiff to induce him to enter into such option agreement; that at no time were any representations of any kind made by the Defendants in this action, or any of them, of a false or misleading nature, or any representations at all to induce the Plaintiff to execute the agreement of January 31, 1936 or the option agreement of December 14, 1935. The court further finds that at no time did any conspiracy or scheme or plan on the part of the Defendants

or either or any of them ever exist to defraud the Plaintiff in any wise whatsoever.''

Appellant urges in his closing brief: (1) That the contract of January 31, 1936, was made without any intention on the part of Yarbrough to perform and that this fact is established by the contract of February 14, 1936, between Oil Tools, Inc., and Technicraft; (2) That the findings of fact establish that the promises of Yarbrough and Oil Tools, Inc., were made without any intention to perform; (3) That the parties were bound to disclose to appellant the negotiations for transfer of the patent applications to Technicraft; (4) That the liability of Technicraft is clearly established by the terms of the several contracts; (5) That the assignee of a patent takes subject to existing equities therein; (6) That the rights of innocent parties have not intervened; (7) That certain findings of fact are wholly unsupported by the evidence, to wit:

(a) That Yarbrough and appellant were not the sole directors of Oil Tools, Inc., up to January 31, 1936;

(b) That appellant did not have confidence in Yarbrough and did not rely upon his promises;

(c) That Oil Tools, Inc., could not have restrained Technicraft from patent infringement;

(d) That Yarbrough did nothing to prevent appellant from learning of the facts in connection with the contract of February 14, 1936;

(8) That the court erred in refusing to determine the question of inventorship and also in excluding certain proffered evidence.

When the contract between appellant and Yarbrough was executed on January 31, 1936, following the terms of the option agreement theretofore existing between them, both parties knew that Oil Tools, Inc., was in difficulties and had no assets with which to raise the capital required to continue the business. At that time appellant sought to procure his patent application as collateral security for the balance due him from Oil Tools, Inc., but Yarbrough refused to turn it over for the reason that he needed it in his effort to finance Oil Tools, Inc.

In interpreting the contracts the trial court of necessity took into consideration the situation of the parties, the objects to be accomplished, as well as the problems confronting the

parties at the time the contracts were entered into. That the court weighed these various aspects of the situation in construing the contracts and in arriving at its ultimate conclusion is clearly revealed by the complete findings of fact made in this cause.

With the facts heretofore narrated before it, the trial court determined in the light thereof that there was no concerted plan or scheme to defraud appellant, and refused to draw an inference of unfair dealing from circumstances, which at best apparently were regarded by said court as merely suspicious.

An examination of the entire record discloses sufficient evidence to support the findings of fact and the judgment, and likewise that no errors were committed by the trial court in the conduct of the trial.

For the reasons stated, the judgments appealed from are affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied April 22, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1942.